# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

RICKY NEWSOM                                                                              PLAINTIFF


v.                                      NO. 3:14-cv-00169 JTK


CAROLYN W. COLVIN, Acting Commissioner                                    DEFENDANT
of the Social Security Administration


### MEMORANDUM OPINION AND ORDER


Plaintiff Ricky Newsom ("Newsom") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Newsom maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole because Newsom's residual functional capacity was not properly assessed.[1] Newsom so maintains for two reasons. He first maintains that no consideration was given to the manipulative limitations caused by his peripheral neuropathy and mild carpal tunnel syndrome.

---

[1]

The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011). Newsom does not challenge the assessment made of his mental residual functional capacity; instead, he only challenges the assessment made of his physical residual functional capacity.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by "at least some" medical evidence. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). [quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)].

The ALJ found that Newsom has severe impairments in the form of mild degenerative disc disease of the lumbar spine, sciatica, degenerative joint disease of the cervical spine with radiculopathy, an anxiety disorder, and poly-substance abuse. The ALJ assessed Newsom's residual functional capacity and found that he is capable of performing a reduced range of light work. In making the foregoing findings, the ALJ made no mention of Newsom's peripheral neuropathy or mild carpal tunnel syndrome and did not incorporate a manipulative limitation into the assessment of his residual functional capacity.

The ALJ's failure to make specific mention of Newsom's peripheral neuropathy or mild carpal tunnel syndrome, and the ALJ's failure to incorporate a manipulative limitation into the assessment of Newsom's residual functional capacity, does not warrant a remand. The Court so finds because Newsom's peripheral neuropathy and mild carpal tunnel syndrome do not give rise to work-related limitations, and the ALJ was not obligated to incorporate a manipulative limitation into the assessment of Newsom's residual functional capacity.

The medical evidence reflects that Dr. Roger Cagle, M.D., ("Cagle") saw Newsom on a number of occasions between August of 2011 and October of 2012. <u>See</u> Transcript at 280-305, 322-323. Cagle repeatedly noted Newsom's complaints of, <u>inter alia</u>, pain in his left arm with numbness and tingling but no weakness. Cagle repeatedly assessed peripheral neuropathy and prescribed medication.

Cagle referred Newsom to Dr. Bing Behrens, M.D., ("Behrens") who saw Newsom in April of 2012 for his complaints of, <u>inter alia</u>, pain, numbness, and tingling. <u>See</u> Transcript at 271-279. Behrens noted that Newsom's numbness and tingling was in his left hand. A neurological examination revealed that Newsom had a "diminished sensation to temperature and light-touch in the first [three] digits of [his] left hand." <u>See</u> Transcript at 274. An electromyogram and nerve conduction studies were consistent with, <u>inter alia</u>, "mild carpal tunnel syndrome on the left." <u>See</u> Transcript at 274-275. Behrens prescribed medication and a wrist splint.

Although Cagle diagnosed peripheral neuropathy and Behren diagnosed mild carpal tunnel syndrome, the focus of a disability determination is not on the diagnosis of an impairment. Instead, the focus is on the extent to which an impairment restricts a claimant's work-related activities. It is true that neither Cagle nor Behren offered an opinion of the work-related limitations caused by Newsom's peripheral neuropathy and mild carpel tunnel syndrome, but neither Cagle nor Behrens was asked to provide such an opinion. When the record is viewed as a whole, though, it cannot be said that those impairments give rise to work-related limitations. The Court so finds for three reasons.

First, Newsom was capable of working despite the symptoms associated with peripheral neuropathy and mild carpal tunnel syndrome. Cagle appears to have first diagnosed peripheral neuropathy in August of 2011 but noted in the progress note that Newsom was working at the time. See Transcript at 280. Cagle reported in subsequent progress notes that Newsom continued to work, this despite repeatedly diagnosing him with peripheral neuropathy. See Transcript at 283, 286, 288, 291, 293, 295, 297. Newsom was working in April of 2012 when Behrens diagnosed mild carpel tunnel syndrome. It was not until July of 2012 that Newsom stopped working. See Transcript at 28-29, 302. It is telling that Newsom stopped working after he took a fall while on a job; there is no evidence he stopped working because of the symptoms associated with peripheral neuropathy or mild carpal tunnel syndrome. It is also worth noting that in Cagle's October 25, 2012, progress note, he reported that Newsom was "cleared to return to work by [a] neurologist, but [a] plant manager [was] not letting [Newsom] return." See Transcript at 322.

Second, Newsom received only minimal and conservative treatment during the relevant period for his symptoms associated with peripheral neuropathy and mild carpal tunnel syndrome.[2] The record reflects that he was seen by Cagle on four separate occasions during the relevant period. See Transcript at 300-301, 302-303, 304-305, 322-323. In Cagle's last two progress notes, he assessed neither peripheral neuropathy nor

---

[2]

The relevant period is the period between the alleged onset date of July 26, 2012, through the date of the ALJ's decision, which was February 3, 2014.

mild carpal tunnel syndrome. See Transcript at 304-305, 322-323. Cagle's last progress note is particularly noteworthy because his findings as to Newsom's extremities reveal nothing outside of normal limits. See Transcript at 322. Cagle and Behren both prescribed medication for Newsom's symptoms, and Behren prescribed a wrist splint. It does not appear that they ever recommended surgery to relieve Newsom's symptoms.

Third, the state agency physicians reviewed Newsom's medical records and opined that he has no manipulative limitations. See Transcript at 52, 68. Although their opinions are not entitled to great weight, their opinions are entitled to some weight. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984) (consulting physician's opinion given limited weight).

Newsom offers a second reason why his residual functional capacity was not properly assessed. He maintains that the ALJ's credibility analysis is flawed because Newsom received treatment on multiple occasions for his chronic pain and because his daily activities were improperly discounted.

As a part of assessing the claimant's residual functional capacity, the ALJ must evaluate the claimant's credibility regarding his subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ is required to consider, "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

As a part of assessing Newsom's residual functional capacity, the ALJ considered Newsom's subjective complaints. In doing so, the ALJ considered the medical and non-medical evidence. He found that although Newsom experiences some pain, he does not experience pain to the degree he alleges.

Substantial evidence on the record as a whole supports the ALJ's credibility analysis. Although his analysis was not exhaustive, he adequately considered the medical and non-medical evidence as required by Polaski v. Heckler. His evaluation of the evidence is one of the acceptable evaluations permitted by the record, and he could find that Newsom does not experience pain to the degree he alleges.

The medical evidence supports the proposition that Newsom experiences some degree of pain, and the ALJ could and did so found. Cagle's progress notes reflect that he repeatedly recorded Newsom's complaints of pain not only in his left arm but in his back and in his left leg and hip. In addition to assessing peripheral neuropathy, Cagle repeatedly assessed sciatica, lumbago, degeneration in Newsom's lumbar and cervical discs, and spinal stenosis in his cervical region. Cagle prescribed medication for Newsom's pain.

In February of 2012, an MRI of Newsom's lumbar spine was performed at Cagle's direction. See Transcript at 262-263. Dr. Barbara Rodrigues, M.D., reviewed the results of the MRI and prepared a radiology report. In the report, she noted, inter alia, minimal disc bulging at L/2-L/3 and degenerative changes of the facet joint bilaterally at L/5-S/1.

Cagle referred Newsom to Dr. John Campbell, M.D., ("Campbell") who saw

Newsom in March of 2012 for his complaints of neck and back pain. See Transcript at 264. In collecting Newsom's medical history, Campbell recorded Newsom's representations that "[he] had trauma back in the 80's," and "has had neck and back pain since." See Transcript at 264. Campbell also noted that Newsom continued to work full time. After reviewing Newsom's medical records and examining him, Campbell offered the following assessment/plan:

> Patient with mild degenerative changes in the lumbar spine. These do not require surgery. I believe he is symptomatic mostly from meralgia paresthetica on the left. He wears his jeans very tightly and has an overhanging abdominal pannus. At this point I think he should try to loosen his clothing around his waist. This might help some of these symptoms. I do not have any other recommendations for the patient. At this point there is no need for any type of neurosurgical intervention.

See Transcript at 264.

Behrens saw Newsom in April of 2012 for his complaints of pain in his neck, back, and arm. In collecting Newsom's medical history, Behrens recorded Newsom's representation that "he has been having this pain for the last [twelve] years ..." See Transcript at 272. Behrens noted that Newsom had taken hydrocodone in the past but was not taking it at the time. A neurological examination revealed, inter alia, that Newsom had normal muscle strength and tone and an unremarkable gait. An electromyogram and nerve conduction studies were consistent with, inter alia, "mild chronic radiculopathy at C7 on the left." See Transcript at 274-275. Behrens also noted the results of the February of 2012 MRI of Newsom's lumbar spine and the results of an

October of 2011 MRI of Newsom's C-spine. Behrens noted that the results of the latter MRI showed "mild degenerative disc disease and degenerative joint disease with mild disc bulging at C5-6, C6-7, L2-3, L4-S1." See Transcript at 275. Behrens assessed, inter alia, chronic neck, back, and left leg pain; "mild degenerative disc disease;" "degenerative joint disease with mild disc bulging at C5-6, C6-7, L2-3, L4-S1;" and "neuralgia pareshetica on the left." See Transcript at 275. He prescribed medication and referred Newsom to a pain management specialist.

State agency physicians subsequently reviewed Newsom's medical records. The physicians opined that Newsom has sufficient residual functional capacity to perform light work. See Transcript at 53, 71.

The medical evidence establishes that Newsom's impairments are minimal to mild, and they give rise to some degree of pain but not the disabling pain he alleges. For instance, he was capable of working despite the symptoms associated with his impairments; the treatment for the impairments was largely conservative, although at one point he was taking hydrocodone; there is no evidence that surgery was ever recommended for his impairments; and there is no evidence that Newsom ever saw a pain management specialist as Behrens recommended. Moreover, the opinions of the state agency physicians that Newsom can perform light work are entitled to some weight, and it is impossible to ignore Campbell's observation that some of Newsom's symptoms could be relieved if he simply loosened his pants.

The non-medical evidence is equally unpersuasive, and the ALJ could and did so

find. He considered Newsom's daily activities, <u>see</u> Transcript at 16-17, activities that included preparing breakfast for his four children and getting three of them off to school, watching his fourth child throughout the day, doing household chores, and preparing supper for all of his children. <u>See</u> Transcript at 28, 204. Newsom also reported that he is capable of taking his children camping in a camper. <u>See</u> Transcript at 208.

The ALJ made little mention of the duration, frequency, and intensity of Newsom's pain, but the evidence relevant to that factor is not particularly compelling. Although he represented to Campbell that the pain had persisted since the 1980s, <u>see</u> Transcript at 264, and represented to Behrens that the pain had persisted "for the last [twelve] years," <u>see</u> Transcript at 272, Newsom was able to work for years and only stopped working in July of 2012 when he took a fall while on a job.

The ALJ noted the dosage, effectiveness, and side effects of Newsom's medication and could and did find that he maintained a "conservative course of treatment." <u>See</u> Transcript at 15. It is true that he once took strong pain medication, but he had stopped taking it by the time of the administrative hearing. <u>See</u> Transcript at 31, 36-37. He attributed his use of only over-the-counter pain medication to a lack of funds, but he has offered nothing to support his assertion.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." <u>See</u> <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, the Court finds that Newsom has not offered a legitimate reason for deviating from the aforementioned rule. The ALJ's credibility analysis, while not exhaustive, is not

flawed, and his evaluation of the evidence is one of the acceptable evaluations permitted by the record.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Newsom's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 26th day of May, 2015.

_____
UNITED STATES MAGISTRATE JUDGE